**EMMET, MARVIN & MARTIN, LLP**
120 Broadway, 32nd Floor
New York, NY 10271
Tel: 212-238-3148
Thomas A. Pitta, Esq.
tpitta@emmetmarvin.com
Jennifer R. Pierce, Esq.
jpierce@emmetmarvin.com
*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Venetian Care & Rehabilitation Center, LLC, *et al.* | Case No.: 26-14510(VFP) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' AMENDED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")[2]

respectfully state as follows in support of this motion (this "**Motion**"):

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Venetian Care & Rehabilitation Center, LLC (3447); Windsor Healthcare Management, LLC (8442); Buckingham at Norwood Care & Rehabilitation Center, LLC (8881); Ashbrook Care & Rehabilitation Center LLC (8833); Cornell Hall Care & Rehabilitation Center LLC (9141); Greenbrook Manor Care & Rehabilitation Center LLC (9365); Llanfair House Care & Rehabilitation Center LLC (9620); Merwick Care & Rehabilitation Center, LLC (9389); Canterbury at Cedar Grove Care & Rehabilitation Center LLC (8863).

[2] A detailed description of the Debtors, their business, and the facts and circumstances supporting these chapter 11 cases is set forth in the *Declaration of Jacen Dinoff in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

9288147v.3

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 345, 363, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Cod**e"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local Rules**").

**Background**

4.      As set forth in the First Day Declaration, the Debtors are a family-owned and operated organization that provided clinically sophisticated post-hospital care and rehabilitation, as well as nursing care, in facilities throughout New Jersey.  The Debtors operated 8 skilled nursing facilities, which are now owned and operated by the New Operators by using the Debtors' licenses pending the New Operators' CHOW approval.  Accordingly, the Debtors essentially exist as a pass-through entity for the collection and distribution of payments to and from the New Operators, on the one hand, and vendors/payors (such as insurers, residents, Medicare, and Medicaid), on the other hand.

-2-

5.      On April 23, 2026 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are seeking to maintain the accounts of their businesses to pursue and collect certain accounts receivable owed to the Debtors for the benefit of the creditors as well as support the billing and collections of the New Operators under the terms of the OTAs (as defined herein) as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

<div align="center">**The Debtors' Cash Management System**</div>

**I.      The Cash Management System**

6.      In or around April 2025, the Debtors entered into Asset Purchase Agreements, Operations Transfer Agreements (the "**OTAs**") and Administrative Services Agreements, as well as various other agreements, with the New Operators in conjunction with sales of assets.  Upon closing of the sales, the New Operators applied for the required licenses and the Debtors agreed to continue collections under payor contracts under the existing licenses for the benefit of the buyers.  Both parties agreed that: "To the extent a Party receives any payments for accounts receivable of another Party, the Parties acknowledge that the Party receiving the payment belonging to another Party shall hold the payment in trust…" (from various OTAs).  There is also agreement on how these funds are to be transferred to the appropriate party.

7.      As of the Petition Date, the Debtors maintain 80 bank accounts (collectively, the "**Bank Accounts**").  The Bank Accounts consist of (i) 56 accounts held at JPMorgan Chase Bank,

N.A., Citizens Bank, N.A., KeyBank National Association, M&T Bank, and PNC Bank, National Association; and (ii) 24 personal needs allowance accounts serviced by National Datacare Management (collectively, the "**Cash Management Banks**").  A list of the Bank Accounts is attached hereto as **Exhibit A**.

8.     Each of the Debtors, other than Windsor Healthcare Management, LLC, has multiple accounts designated as operating, payroll and, in some instances, receipts Bank Accounts in Citizens Bank, Chase Bank, Key Bank, M&T Bank and PNC Bank.  Many of these accounts have had no activity in the past year and/or since the sale of the Debtors' businesses closed.

9.     The Debtors need certain accounts that serve as designated depositories for payors after billing to insurance providers. Changing such account relationships with payors is cumbersome and leads to delay in collections.  These accounts are also providing collection of receivables due to the New Operators as noted above.  These accounts have also been used for the payment of certain ongoing expenses in support of the collection of receivables.  The Debtors need to keep these accounts open and continue to use them for their stated purpose.

10.     There is a general and an operating Bank Account at Windsor Healthcare Management, LLC used for the collection and disbursement of accounts receivable funds for both the Debtors and disbursed or held in trust for the New Operators as noted above.  The Debtors would propose to also keep these Bank Accounts open and continue using them for that purpose as well as paying expenses for the collection of accounts receivable.

11.     The foregoing operating, payroll, and receipts Bank Accounts are primarily managed by Andrew Masetti, a former Chief Financial Officer of Windsor Healthcare Management, LLC.  Mr. Masetti maintains oversight over these Bank Accounts and implements

-4-

cash management controls for entering, processing and releasing funds.  Additionally, Mr. Masetti ensures transfers are properly accounted for.

12.     Certain collection Bank Accounts are inactive and the Debtor anticipates closing them.  These accounts are as follows:

    a.   The Buckingham at Norwood Care & Rehabilitation Center, LLC

        i.   Chase account ending in *5309

    b.   The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC

        i.   Chase account ending in *2388

        ii.   Chase account ending in *2396

    c.   Merwick Care & Rehabilitation Center, LLC

        i.   Chase account ending in *2927

    d.   The Venetian Care & Rehabilitation Center, LLC

        i.   Chase account ending in *3985

13.     Each of these entities also has payroll Bank Accounts at both Citizens Bank, N.A. and JPMorgan Chase Bank, N.A. that are no longer being used.  The Debtor anticipates closing these accounts as well.  The accounts are as follows:

    a.   Ashbrook Care & Rehabilitation Center, LLC

        i.   Citizens account ending in *2573

        ii.   Chase account ending in *0751

    b.   The Buckingham at Norwood Care & Rehabilitation Center, LLC

        i.   Citizens account ending in *2303

        ii.   Chase account ending in *5283

   c.   The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC

       i.   Citizens account ending *2911

      ii.   Chase account ending *2370

   d.   Cornell Hall Care & Rehabilitation Center, LLC

       i.   Citizens account ending *8278

      ii.   Chase account ending *7178

   e.   Greenbrook Manor Care & Rehabilitation Center, LLC

       i.   Citizens account ending *8674

      ii.   Chase account ending *2772

   f.   Llanfair House Care & Rehabilitation Center, LLC

       i.   Citizens account ending *0568

      ii.   Chase account ending *2932

   g.   Merwick Care & Rehabilitation Center, LLC

       i.   Citizens account ending *3312

      ii.   Chase account ending *2901

   h.   The Venetian Care & Rehabilitation Center, LLC

       i.   Citizens account ending *4161

      ii.   Chase account ending *3977

14.    In addition, each Debtor has three personal needs allowance ("**PNA**") Bank Accounts that were set up for the Debtors' former patients prior to the sale of the Debtors' assets to the New Operators (collectively with the foregoing Debtors' operating, payroll and receipts accounts, the "**Cash Management System**"). The legacy PNA Bank Accounts consist of resident trust accounts, care cost accounts, and petty cash accounts, which are fiduciary accounts

maintained for the benefit of residents, holding personal funds used for daily living needs, medical incidentals, personal expenses, and other quality-of-life necessities.  These legacy PNA Bank Accounts hold resident property held in trust, and the Debtors serve as custodian of the accounts.

15.     Each PNA Bank Account is set up with a trust ledger with National Datacare Management ("**National Datacare**").  National Datacare acts as the intermediary when funds move to and from the PNA Bank Accounts.  Funds are (i) deposited into the PNA Bank Accounts automatically by a State agency, or by the residents/their agents at the nursing home facilities (now operated by the New Operators); and (ii) withdrawn from the PNA Bank Accounts by the residents/their agents at the nursing home facilities (now operated by the New Operators). Historically, National Datacare commingles the funds in each PNA Bank Account into one general account and holds separate ledgers or trust accounts for each resident.

16.     The Debtors propose to keep the PNA Bank Accounts open and continue using them for that purpose.  Their uninterrupted use is critical because they support the Debtors' former patients who rely on immediate access to funds for personal care items, transportation, clothing, and other necessities that directly affect health, dignity, and wellbeing.  Any disruption can delay access to services and cause harm to residents who may have no practical alternative source of funds.

## II.     **Banking Transactions, Bank Fees, and Related Expenses**

17.     The Debtors employ four primary methods of making payments from the Bank Accounts to third parties, *i.e.*, by ACH, wire transfer, check, or direct debit.

18.     In the ordinary course of business, the Cash Management Banks debit the Bank Accounts on account of all manner of payment items.  In connection with these payments and the general maintenance of the Bank Accounts, the Cash Management Banks charge, and the Debtors

pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "**Bank Fees**").

### III.   Compliance with Section 345 of the Bankruptcy Code and U.S. Trustee Guidelines

19.   Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires the estate to obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the Court "for cause" orders otherwise.  11 U.S.C. § 345(b).  Additionally, the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "**U.S. Trustee Guidelines**") of the Office of the United States Trustee for the District of New Jersey (the "**U.S. Trustee**") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee.

20.   The Debtors' Bank Accounts are maintained at banks designated as authorized depositories by the U.S. Trustee and are held at Cash Management Banks that are insured by the Federal Deposit Insurance Corporation (the "**FDIC**") up to $250,000.00.  The Cash Management System is critical to the ongoing stability of the Debtors' businesses and smooth transition into chapter 11.

### IV.    **Business Forms**

21.    As part of their Cash Management System, the Debtors utilize various preprinted business forms (the "**Business Forms**") in the ordinary course.  To minimize expenses to their estates and avoid confusion during the pendency of these chapter 11 cases, the Debtors request that the Court authorize the Debtors' continued use of all existing preprinted correspondence and business forms (including, without limitation, letterhead and preprinted checks) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms.  If the Debtors need to order additional business forms postpetition, the Debtors will include the required debtor-in-possession designations.

### V.    **Intercompany Transactions**

22.    The Debtors maintain business relationships and entered into transactions amongst themselves in the ordinary course of business (the "**Intercompany Transactions**") resulting in intercompany receivables and payables (the "**Intercompany Balances**").[3]  The Debtors generally account for and record all Intercompany Transactions and Intercompany Balances in the ordinary course of business.

23.    The Intercompany Balances and Intercompany Transactions cover a number of different categories, including the collection and disbursement of accounts receivable funds for both the Debtors and disbursed or held in trust for the New Operators as noted above.

---

[3]    Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises similar to the Debtors', the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval.  Nonetheless, the Debtors are disclosing such transactions in this Motion out of an abundance of caution, as the continued performance of the ordinary course Intercompany Transactions on a postpetition basis is integral to ensuring the Debtors' ability to operate their business as debtors in possession.

Accordingly, at any given time there may be Intercompany Balances as a result of the Intercompany Transactions.

24.     The Intercompany Transactions are an essential component of the Debtors' Cash Management System.  Any interruption of the Intercompany Transactions would severely disrupt the Debtors' and the New Operators' operations and greatly harm the Debtors' estates and their stakeholders as these Intercompany Transactions are integral in allowing the Debtors to support their contractual obligations to the New Operators.  Accordingly, the Debtors seek authority—and, to the extent applicable, relief from the automatic stay—to continue the Intercompany Transactions (including with respect to "netting" or setoffs) in the ordinary course of business on a postpetition basis in a manner consistent with the Debtors' past practices.[4]

**Basis for Relief**

I.     **The Court Should Authorize the Debtors to Continue to Use the Cash Management System**

25.     Pursuant to 28 U.S.C. § 586(a)(3) and the U.S. Trustee Guidelines, debtors in possession are required to, among other things: (a) close all existing bank accounts and open new accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee; (b) establish one "debtor in possession" account for estate funds required for the payment of taxes, including payroll taxes; and (c) maintain a separate "debtor in possession" account for cash collateral (collectively, the "**Accounting Requirements**").  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

---

[4]     This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this Motion.  To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

26.     Notwithstanding the Accounting Requirements, continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course without notice or a hearing."  11 U.S.C. § 363(c)(1).  Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  Additionally, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that maintaining an existing cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets").

27.     To accomplish the goals of the Accounting Requirements without the burden of overhauling the Cash Management System in the early days of these chapter 11 cases, the Debtors, with their advisors, have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' Chief Wind-Down Officer. In light of such protective measures, the Debtors respectfully submit that parties in interest will not be harmed by their maintenance of the Cash Management System.

28.     Further, the legacy PNA Bank Accounts for the Debtors' former patients should be protected and permitted to operate without interruption, because preserving access to those funds

safeguards resident welfare, honors fiduciary obligations, and prevents avoidable hardship to a dependent population. Continuity of these Bank Accounts is integral to resident care and protection and results in no prejudice to the Debtors, who have no ownership of the funds in those accounts.

29.   Requiring the Debtors to adopt a new cash management system during these chapter 11 cases would be expensive, burdensome and unnecessarily disruptive to the Debtors. Importantly, the Cash Management System provides significant benefits to the Debtors, including, among other things, the ability to (a) collect funds for billed insurance providers, (b) collect receivables due to the New Operators, and (c) ensure the maximum availability of funds when and where necessary. Any disruption of the Cash Management System could have a negative effect on the Debtors' efforts to maximize value during these cases.

30.   By contrast, maintaining the current Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies. Maintaining the current Cash Management System will also allow the Debtors' Chief Wind-Down Officer to focus on his daily responsibilities. The Debtors can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones. With the protective measures put in place by the Debtors, the benefits of continuing the Cash Management System decidedly outweigh the costs.

31.   In addition, all Cash Management Banks where the Debtors maintain Bank Accounts have been or are in the process of being advised not to honor checks, advises, drafts or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and as directed by the Debtors. Therefore, the goals of the U.S.

-12-

Trustee Guidelines can be satisfied, and the Debtors' creditors will be protected without closing the Bank Accounts.

32.     As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtors' tax obligations can be paid out of the Bank Accounts as they are in the ordinary course of business, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, as set forth in the required reporting.

33.     In connection with the Cash Management System, the Debtors further request authorization to continue to pay, honor, or deduct certain Bank Fees from the appropriate accounts. Payment of the Bank Fees will minimize disruption to the Debtors' operations and is therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Cash Management Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, and/or refuse to provide banking services to the Debtors.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Cash Management Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

34.     For these reasons, the Debtors respectfully submit that cause exists to continue to allow the Debtors to use the existing Bank Accounts as described herein.  The Debtors will work in good faith with the U.S. Trustee, however, to resolve any concerns regarding the continued use of these accounts.

35.     Courts in this district have regularly allowed debtors in chapter 11 cases to maintain their existing cash management systems and such relief generally is non-controversial.  *See, e.g.*, *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 4, 2024) (authorizing the

debtors to continue using the cash management system maintained by the debtors prepetition on an interim basis); *In re Invitae Corporation*, No. 24-11362 (MBK) (Bank. D.N.J. Mar. 18, 2024) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition on a final basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Feb. 29, 2024) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 6, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 22, 2023) (same); *In re DirectBuy Home Improvement, Inc.*, No. 23-19159 (SLM) (Bankr. D.N.J. Nov. 9, 2023) (same); *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK) (Bankr. D.N.J. July 26, 2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. July 28, 2023) (same).

II.   **The Court Should Authorize the Debtors to Continue to Use Their Existing Bank Forms**

36.   To avoid disruption of the Cash Management System and unnecessary expenses, the Debtors request that they be authorized to continue to use the Business Forms substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.

37.   The Debtors submit that parties in interest will not be prejudiced by this relief. Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing the Business Forms is unnecessary and would be unduly burdensome. The Debtors further submit that once they have exhausted their existing stock of Business Forms, they shall ensure that any new Business Forms are clearly labeled "Debtors in Possession." With respect to any Business Forms that exist or are generated electronically, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtors in Possession."

**III.**   **The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims Among the Debtors**

38.   The Debtors' funds move through the Cash Management System as described above.  At any given time, there may be intercompany claims (the "**Intercompany Claims**") owed by one Debtor to another Debtor in the ordinary course as part of the Cash Management System. The Debtors track all fund transfers in the ordinary course of their business and can ascertain, trace, and account for all Intercompany Transactions previously described.   The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.   If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment. Accordingly, the Debtors submit that the continued performance of the Intercompany Transactions is in the best interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted to continue such performance.

39.   Because these transactions represent extensions of intercompany credit made in the ordinary course of the Debtors' operations that are an essential component of the Cash Management System, the Debtors request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order and request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code all postpetition payments (or other transfer of cash, whether to or from the Debtors) from a Debtor to another Debtor on account of a postpetition Intercompany Transaction be accorded administrative expense status. This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

40.     The Debtors further submit that the relief requested herein fairly balances the Debtors' need to facilitate the ordinary course operation of their business, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders in transparency, on the other hand.  The requested relief will also ensure that a Debtor's estate will not be unduly burdened by the cost of transfers.

41.     Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district.  *See, e.g.*, *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 4, 2024) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition on an interim basis); *In re Invitae Corporation*, No. 24-11362 (MBK) (Bank. D.N.J. Mar. 18, 2024) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition on a final basis); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Feb. 29, 2024) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 6, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 22, 2023) (same); *In re DirectBuy Home Improvement, Inc.*, No. 23-19159 (SLM) (Bankr. D.N.J. Nov. 9, 2023) (same); *In re Whittaker, Clark & Daniels, Inc.*, No. 23-13575 (MBK) (Bankr. D.N.J. July 26, 2023) (same); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. July 28, 2023) (same).

**IV.    Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business is Warranted**

42.     As discussed above, strict implementation of the U.S. Trustee Guidelines would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and reorganize in an efficient manner.  Thus, the Debtors request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the

ordinary course of business.  In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.

43.    The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or after the Petition Date.  The Debtors also request that, to the extent a bank, including a Cash Management Bank, honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary item handling procedures, such bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition.  The Debtors submit that such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

44.    Moreover, the Debtors request that the Court authorize the Cash Management Banks to (a) continue to charge the Debtors the Bank Fees, as applicable, and (b) charge-back

returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective bank at which the Bank Account is located. Finally, the Debtors request that the Court authorize the Debtors to pay any Bank Fees, including prepetition amounts.

45. The relief requested herein is consistent with relief regularly granted by Courts in this district. *See, e.g.*, *In re WeWork Inc., et. al.*, No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 6, 2024) (authorizing cash management banks to continue to maintain, service, and administer debtors' bank accounts as accounts of the debtors as debtors in possession on a final basis); *In re DirectBuy Home Improvement, Inc.*, No. 23-19159 (SLM) (Bankr. D.N.J. Nov. 9, 2023) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. December 22, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 27, 2023) (same).

## V. <u>Waiver of Section 345 of the Bankruptcy Code is Warranted</u>

46. To the extent the Cash Management System does not strictly comply with the U.S. Trustee Guidelines and section 345 of the Bankruptcy Code, the Debtors seek a waiver of the deposit requirements set forth therein and in the U.S. Trustee Guidelines. Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) provides that the estate must obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the

undertaking of an adequate corporate surety, "unless the Court for cause orders otherwise."  11

U.S.C. § 345(b).

47.    Courts may waive compliance with section 345(b) of the Bankruptcy Code for

"cause."  In evaluating whether "cause" exists, courts have considered a number of factors,

including, among others, the sophistication and size of a debtor's business, the amounts of the

investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the

funds, the debtor's ability to reorganize in the face of failure of one or more of the financial

institutions, the benefit to the debtor of a waiver of the section 345(b) requirements, the potential

harm to the estate, and the reasonableness of such a waiver under the circumstances.  *See In re*

*Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999)

48.    Cause exists to suspend the requirements under section 345(b) of the Bankruptcy

Code for a period of thirty (30) days.  The Debtors' Bank Accounts are held at authorized

depositories, however, in the event the Cash Management System does not strictly comply with

the requirements of section 345, the Debtors should be allowed to continue to use their Cash

Management System to avoid any interruptions in the day-to-day operations.

49.    Requiring the Debtors to modify their Cash Management System to strictly adhere

to the restrictions established by section 345(b) of the Bankruptcy Code will only distract the

Debtors' management and cause the estates to unnecessarily incur potentially substantial costs to

the detriment of creditors.

50.    If necessary, the benefits of a waiver would far outweigh any potential harm to the

estates from noncompliance with section 345(b).  Therefore, the Debtors respectfully submit that

cause exists (a) to continue to allow the Debtors to utilize their existing Bank Accounts, and (b) to

waive the deposit requirements of section 345(b) of the Bankruptcy Code.

**VI.**    **The Court Should Authorize the Debtors to Pass Through Amounts Collected on Account of the New Operators' Business Held in Trust Pursuant to the OTAs**

51.    As described above, pursuant to the OTAs, the Debtors collect payments under payor contracts using the Debtors' existing licenses for the benefit of the New Operators pending the New Operators' receipt of Change of Ownership ("**CHOW**") approval. Under the OTAs, the parties agreed that "[t]o the extent a Party receives any payments for accounts receivable of another Party, the Parties acknowledge that the Party receiving the payment belonging to another Party shall hold the payment in trust . . . ." Accordingly, the Debtors hold certain funds in trust for the benefit of the New Operators.

52.    The Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to continue to pass through to the New Operators amounts collected by the Debtors on account of the New Operators' business that are held in trust pursuant to the OTAs. These funds are not property of the Debtors' estates but rather are held in trust for the benefit of the New Operators. Accordingly, the Debtors should be authorized to remit such funds to the New Operators in accordance with the terms of the OTAs and consistent with prepetition practices.

**53.**    Absent authority to pass through such amounts, the Debtors would be unable to honor their contractual obligations under the OTAs, which would disrupt the ongoing operations at the facilities now operated by the New Operators and potentially jeopardize the health and safety of the residents at those facilities. Moreover, because the funds are held in trust and do not belong to the Debtors, there is no prejudice to the Debtors' creditors from the requested relief. For these reasons, the Debtors respectfully submit that authority to pass through trust funds to the New Operators is warranted.

**<u>Processing of Checks and Electronic Fund Transfers Should Be Authorized</u>**

54.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from receivables they continue to collect on account of services provided prior to the sale of their businesses.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**<u>The Requirements of Bankruptcy Rule 6003 Are Satisfied</u>**

55.     The Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations, and the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors at this important juncture.  The requested relief is necessary for the Debtors to use the Bank Accounts for their stated purposes and maximize the value of their estates for the benefit of all stakeholders.  The Debtors submit that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

**Request of Waiver of Stay**

56.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to use the Bank Accounts for their stated purposes and preserve the value of their estates.

**Waiver of Memorandum of Law**

57.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

**Reservation of Rights**

58.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any

-22-

lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Notice

59.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the U.S. Trustee for the District of New Jersey, Attn: Fran B. Steele, Esq. (Fran.B.Steele@usdoj.gov); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the District of New Jersey; (d) the Internal Revenue Service; (e) the Cash Management Banks; and (f) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

60.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

DATED: April 30, 2026                                  Respectfully submitted,

                                                       **EMMET, MARVIN & MARTIN, LLP**

                                                       By: __/s/ Thomas A. Pitta_____
                                                               Thomas A. Pitta, Esq.

-23-

Jennifer R. Pierce, Esq.
120 Broadway, 32nd Floor
New York, NY 10271
Tel: 212-238-3148
tpitta@emmetmarvin.com
jpierce@emmetmarvin.com

*Proposed Counsel to Debtors and Debtors
in Possession*

## EXHIBIT A

### List of Bank Accounts

**PNA Accounts**

| | Resident Trust Acct # | Care Cost Acct # | Petty Cash Acct # |
|---|---|---|---|
| Ashbrook Care & Rehabilitation Center, LLC | *5533 | *5541 | *5568 |
| The Buckingham at Norwood Care & Rehabilitation Center, LLC | *5437 | *5445 | *5453 |
| The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC | *5461 | *5488 | *5496 |
| Cornell Hall Care & Rehabilitation Center, LLC | *5509 | *5517 | *5525 |
| Greenbrook Manor Care & Rehabilitation Center, LLC | *5269 | *5277 | *5285 |
| Llanfair House Care & Rehabilitation Center, LLC | *5218 | *5226 | *5234 |
| Merwick Care & Rehabilitation Center, LLC | *6536 | *6544 | *6552 |
| The Venetian Care & Rehabilitation Center, LLC | *5584 | *5592 | *5605 |

**Remaining Accounts**

| | Bank | Acct # |
|---|---|---|
| Ashbrook Care & Rehabilitation Center, LLC | Citizens Bank | *5331 |
| | Citizens Bank | *2573 |
| | Chase Bank | *0736 |
| | Chase Bank | *0751 |

| | Bank | Acct # |
|---|---|---|
| The Buckingham at Norwood Care & Rehabilitation Center, LLC | Citizens Bank | *4352 |
| | Citizens Bank | *8181 |
| | Citizens Bank | *2421 |
| | Citizens Bank | *2303 |
| | Key Bank | *3704 |
| | Key Bank | *8621 |
| | Chase Bank | *5218 |
| | Chase Bank | *5309 |
| | Chase Bank | *5317 |

| | | |
|---|---|---|
| | Chase Bank | *5283 |

| | | |
|---|---|---|
| The Canterbury at Cedar Grove Care & Rehabilitation Center, LLC | Citizens Bank | *0569 |
| | Citizens Bank | *3300 |
| | Citizens Bank | *2987 |
| | Citizens Bank | *2911 |
| | M&T Bank | *7396 |
| | M&T Bank | *0165 |
| | Chase Bank | *2362 |
| | Chase Bank | *2388 |
| | Chase Bank | *2396 |
| | Chase Bank | *2370 |

| | | |
|---|---|---|
| Cornell Hall Care & Rehabilitation Center, LLC | Citizens Bank | *5388 |
| | Citizens Bank | *8278 |
| | Chase Bank | *7160 |
| | Chase Bank | *7178 |

| | | |
|---|---|---|
| Greenbrook Manor Care & Rehabilitation Center, LLC | Citizens Bank | *5289 |
| | Citizens Bank | *8674 |
| | Chase Bank | *2756 |
| | Chase Bank | *2772 |

| | | |
|---|---|---|
| Llanfair House Care & Rehabilitation Center, LLC | Citizens Bank | *4647 |
| | Citizens Bank | *0568 |
| | Chase Bank | *2916 |
| | Chase Bank | *2932 |

| | | |
|---|---|---|
| Merwick Care & Rehabilitation Center, LLC | Citizens Bank | *3022 |
| | Citizens Bank | *8176 |
| | Citizens Bank | *3393 |
| | Citizens Bank | *3312 |
| | Key Bank | *1472 |
| | Chase Bank | *2893 |
| | Chase Bank | *2919 |
| | Chase Bank | *2927 |
| | Chase Bank | *2901 |

-27-

The Venetian Care & Rehabilitation Center, LLC

| Citizens Bank | *3977 |
|---|---|
| Citizens Bank | *4316 |
| Citizens Bank | *4420 |
| Citizens Bank | *4161 |
| Key Bank | *0185 |
| Chase Bank | *3969 |
| Chase Bank | *3985 |
| Chase Bank | *3993 |
| Chase Bank | *3977 |

Windsor Healthcare Management Limited Liability Company

| PNC Bank | *2725 |
|---|---|
| Chase Bank | *2138 |

**EXHIBIT  B**

**PROPOSED INTERIM ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**EMMET, MARVIN & MARTIN, LLP**
Thomas A. Pitta, Esq.
Jennifer R. Pierce, Esq.
120 Broadway 32nd Floor
New York, New York 10271
(212) 238-3000 (Telephone)

| | |
|---|---|
| In re:<br><br>Venetian Care & Rehabilitation Center, LLC,<br><br>Debtor.[5] | Chapter 11<br><br>Case No. 26-14510(VFP)<br><br>Judge Vincent F. Papalia<br><br>(Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING
BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY
TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS
TO POSTPETITION INTERCOMPANY CLAIMS,
AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through thirteen (13), is

hereby **ORDERED**.

---

[5]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Venetian Care & Rehabilitation Center, LLC (3447); Windsor Healthcare Management, LLC (8442); Buckingham at Norwood Care & Rehabilitation Center, LLC (8881); Ashbrook Care & Rehabilitation Center LLC (8833); Cornell Hall Care & Rehabilitation Center LLC (9141); Greenbrook Manor Care & Rehabilitation Center LLC (9365); Llanfair House Care & Rehabilitation Center LLC (9620); Merwick Care & Rehabilitation Center, LLC (9389); Canterbury at Cedar Grove Care & Rehabilitation Center LLC (8863). The location of the Debtors' principal place of business is 100 McClellan Street, Norwood, NJ 07648.

Page (2)

| | |
|---|---|
| Debtors: | VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.* |
| Case No.: | 26-14510(VFP) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF |

Upon the motion (the "Motion")[6] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"): (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing business forms; and (iv) continue to perform Intercompany Transactions (as defined below) consistent with historical practice; (b) granting administrative expense status to post-petition Intercompany Claims; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY ORDERED THAT**:

---

[6] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Page (3)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

1.      The Motion is **GRANTED** on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, **2026, at__:__ _.m., prevailing Eastern Time**. Objections or responses to entry of a final order on the Motion shall be filed **on or before 4:00 p.m., prevailing Eastern Time, on _____, 2026**. If no objections are filed to the Motion, this Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, on an interim basis, but not directed to: (a) continue operating the Cash Management System maintained by the Debtors before the Petition Date, as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (d) continue to perform Intercompany Transactions in the ordinary course of business and on the same terms and consistent with past practice (including with respect to transaction amounts); (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit A** to the Motion, in the names and with the account numbers existing immediately before the Petition Date, without the need to comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines requiring the opening of separate debtor in possession accounts; (f) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (h) pay the Bank Fees,

-3-

Page (4)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts provided that in each case, such action is taken in the ordinary course of business and consistent with historical practices. Notwithstanding the foregoing, once the Debtors have exhausted their existing supply of correspondence, business forms stock and checks, the Debtors will obtain new business forms stock and checks reflecting their status as "Debtors-in-Possession" and include the corresponding lead bankruptcy case number on all checks. Further, within fourteen (14) days of entry of this Interim Order, the Debtors shall update any electronically produced checks to reflect their status as "Debtors-in-Possession" and to include the corresponding lead bankruptcy case number.

4.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices and the Cash Management System, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Debtor Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; provided that the Debtors shall only instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but

-4-

Page (5)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
                  TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
                  CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)
                  MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO
                  PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
                  ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
                  INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

presented to such Cash Management Bank for payment after the Petition Date as authorized by an order of the Court.

5.      The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at the Cash Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with the Cash Management Banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Banks as service charges for the maintenance of the Cash Management System.

6.      Any existing deposit agreements between or among the Debtors, the Cash Management Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions and any blocked account control agreements, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices, including,

Page (6)
Debtors:                    VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:                   26-14510(VFP)
Caption of Order:           INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
                            TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
                            CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)
                            MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO
                            PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
                            ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
                            INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

7.      To the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is thirty (30) days from entry of this Interim Order, or such longer time as agreed with the U.S. Trustee, without prejudice to seeking additional extensions from the Court, to either come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; provided that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

8.      For the Cash Management Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement for the District of New Jersey, within five (5) days of the date of entry of this Interim Order, the Debtors shall (a) contact the Cash Management Banks, (b) provide the Cash Management Banks with each of the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts held at the Cash Management Banks as being held by a debtor in possession in the Debtors' bankruptcy cases, and provide the case number.

9.      To the extent any banks at which the Debtors hold Debtor Accounts are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the

-6-

Page (7)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
                  TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
                  CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)
                  MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO
                  PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
                  ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
                  INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

U.S. Trustee within thirty (30) days of the date of this Interim Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully preserved.

10.     Subject to the terms hereof, the Debtors are authorized in the ordinary course of business and consistent with historical practices, to open any new bank accounts or close any existing bank accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate. The relief granted in this Interim Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a "Debtor Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank"; provided that any new domestic bank account opened by the Debtors shall be established at an institution that is (a) a party to a Uniform Depository Agreement with the U.S. Trustee for the District of New Jersey or is willing to immediately execute a Uniform Depository Agreement, and (b) bound by the terms of this Interim Order. The Debtors shall provide notice within five (5) days to the U.S. Trustee and counsel to any statutory committees of the opening of a new Bank Account or closing of any Bank Account. In addition, the opening or closing of any Bank Account shall be timely indicated on the Debtors' monthly operating reports. The U.S. Trustee and any statutory committees appointed in these chapter 11 cases will have fourteen (14) days from receipt of such notice to file any objection with regard to the opening or closing of a

-7-

Page (8)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)
MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO
PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

bank account, or such later date as may be extended by the Court or agreed to between the Debtors,

the U.S. Trustee, and/or any statutory committees appointed in these chapter 11 cases. Any new

debtor-in-possession bank account must bear the designation "Debtor-in-Possession" and

designated as "Debtor-in-Possession" accounts with the case number.

11.     All banks maintaining any of the Bank Accounts that are provided with notice of

this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts

or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop

payment orders in accordance with the documents governing such Bank Accounts.

12.     The Cash Management Banks are authorized, without further order of this Court,

to deduct any applicable fees from the applicable Debtor Bank Accounts in the ordinary course of

business consistent with historical practices.

13.     The Cash Management Banks are authorized, without further order of this Court,

to charge back to the appropriate accounts of the Debtors any amounts resulting from returned

checks or other returned items, including returned items that result from ACH transactions, wire

transfers, or other electronic transfers of any kind, regardless of whether such returned items were

deposited or transferred prepetition or postpetition and regardless of whether the returned items

relate to prepetition or postpetition items or transfers.

14.     Subject to the terms set forth herein, any bank, including the Cash Management

Banks, may rely upon the representations of the Debtors with respect to whether any check, draft,

wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored

Page (9)
Debtors:        VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:       26-14510(VFP)
Caption of Order:    INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall not be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

15.    Any banks, including the Cash Management Banks, are further authorized to honor the directions of the Debtors with respect to the opening and closing of any Debtor Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the joint instructions of the Debtors, provided that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law. The Debtors shall provide notice within five (5) business days to the U.S. Trustee and counsel to any statutory committees of any action taken pursuant to this ordered paragraph; the U.S. Trustee and any statutory committees appointed in these chapter 11 cases will have fourteen (14) days from receipt of such notice to file any objection thereto, or such later date as may be extended by the Court or agreed to between the Debtors, the U.S. Trustee, and/or any statutory committees appointed in these chapter 11 cases.

16.    The Debtors are authorized to enter into, engage in, and satisfy any payments in connection with the Intercompany Transactions, including those related to transfers to the New

-9-

Page (10)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

Operators, and to take any actions related thereto, in each case on the same terms as (including with respect to amount), in the ordinary course and consistent with past practice.

17.    The Debtors are authorized to continue engaging in Intercompany Transactions (including with respect to "netting" or setoffs) in connection with the Cash Management System in the ordinary course of business on a post-petition basis in a manner consistent with the Debtors' past practice. For the avoidance of doubt, the Debtors are also authorized to continue Intercompany Transactions arising from or related to the operation of the businesses, including Intercompany Transactions with the New Operators to the extent ordinary course and consistent with past practice.

18.    The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status. Upon the request of the U.S. Trustee or any statutory committee appointed in these chapter 11 cases, the Debtors shall provide access to such records to the U.S. Trustee and/or the advisors to any statutory committee appointed in these chapter 11 cases on a confidential, professional-eyes-only basis.

19.    The Debtors are authorized to continue to pass through to the New Operators amounts collected by the Debtors on account of the New Operators' business that are held in trust pursuant to the OTAs.

Page (11)

Debtors:        VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:       26-14510(VFP)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

20.     All post-petition payments from a Debtor to another Debtor or non-Debtor under any post-petition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

21.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

22.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

23.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right

-11-

Page (12)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
                  TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
                  CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)
                  MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO
                  PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING
                  ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
                  INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order except as otherwise provided in this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

24.     The Debtors shall maintain records of all transfers within the Cash Management System, so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained prior to the commencement of these chapter 11 cases.

25.     The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

26.     Notwithstanding anything to the contrary in the Motion or this Interim Order, any payment made or authorization hereunder shall be subject to the applicable budget and/or cash collateral authorization requirements imposed on the Debtors under any order(s) of this Court

-12-

Page (13)
Debtors:              VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:             26-14510(VFP)
Caption of Order:     INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
                      TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR
                      CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C)
                      MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO
                      PERFORM    INTERCOMPANY    TRANSACTIONS,    (II)    GRANTING
                      ADMINISTRATIVE    EXPENSE    STATUS    TO    POSTPETITION
                      INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

authorizing the Debtors' use of cash collateral and post-petition debtor-in-possession financing

facilities, including any order(s) authorizing post-petition financing.

27.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments

not otherwise due.

28.     Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

29.     Notwithstanding Bankruptcy Rules 6004(h) and 4001(a), the terms and conditions

of this Interim Order are immediately effective and enforceable upon its entry.

30.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Interim Order in accordance with the Motion.

31.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

**EXHIBIT  C**

**PROPOSED FINAL ORDER**

<div style="border:1px solid">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**EMMET, MARVIN & MARTIN, LLP**
Thomas A. Pitta, Esq.
Jennifer R. Pierce, Esq.
120 Broadway 32nd Floor
New York, New York 10271
(212) 238-3000 (Telephone)

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| Venetian Care & Rehabilitation Center, LLC, | Case No. 26-14510(VFP) |
| Debtor.[7] | Judge Vincent F. Papalia |
| | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING
BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY
TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS
TO POSTPETITION INTERCOMPANY CLAIMS,
AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through thirteen (13), is

hereby **ORDERED**.

---

[7] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Venetian Care & Rehabilitation Center, LLC (3447); Windsor Healthcare Management, LLC (8442); Buckingham at Norwood Care & Rehabilitation Center, LLC (8881); Ashbrook Care & Rehabilitation Center LLC (8833); Cornell Hall Care & Rehabilitation Center LLC (9141); Greenbrook Manor Care & Rehabilitation Center LLC (9365); Llanfair House Care & Rehabilitation Center LLC (9620); Merwick Care & Rehabilitation Center, LLC (9389); Canterbury at Cedar Grove Care & Rehabilitation Center LLC (8863). The location of the Debtors' principal place of business is 100 McClellan Street, Norwood, NJ 07648.

Page (2)
Debtors:            VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:           26-14510(VFP)
Caption of Order:   FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                    OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                    PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                    EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                    INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                    EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                    (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[8] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing business forms; and (iv) continue to perform Intercompany Transactions (as defined below) consistent with historical practice; (b) granting administrative expense status to post-petition Intercompany Claims; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY ORDERED THAT**:

---

[8] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Page (3)
Debtors:                VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:               26-14510(VFP)
Caption of Order:       FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                        OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                        PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                        EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                        INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                        EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                        (III) GRANTING RELATED RELIEF

1.      The Motion is **GRANTED** on a final basis as set forth herein.

2.      The Debtors are authorized, on a final basis, but not directed to: (a) continue operating the Cash Management System maintained by the Debtors before the Petition Date, as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (d) continue to perform Intercompany Transactions in the ordinary course of business and on the same terms and consistent with past practice (including with respect to transaction amounts); (e) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit A** to the Motion, in the names and with the account numbers existing immediately before the Petition Date, without the need to comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines requiring the opening of separate debtor in possession accounts; (f) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (g) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (h) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts provided that in each case, such action is taken in the ordinary course of business and consistent with historical practices. Notwithstanding the foregoing, once the Debtors have exhausted their existing supply of correspondence, business forms stock and checks, the Debtors

Page (4)
Debtors:             VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:            26-14510(VFP)
Caption of Order:    FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                     OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                     PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                     EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                     INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                     EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                     (III) GRANTING RELATED RELIEF

will obtain new business forms stock and checks reflecting their status as "Debtors-in-Possession" and include the corresponding lead bankruptcy case number on all checks. Further, within fourteen (14) days of entry of this Final Order, the Debtors shall update any electronically produced checks to reflect their status as "Debtors-in-Possession" and to include the corresponding lead bankruptcy case number.

3.    The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices and the Cash Management System, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Debtor Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order; provided that the Debtors shall only instruct or request any Cash Management Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Cash Management Bank for payment after the Petition Date as authorized by an order of the Court.

4.    The Cash Management Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at the Cash

-4-

Page (5)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                  OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                  PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                  EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                  INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                  EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                  (III) GRANTING RELATED RELIEF

Management Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with the Cash Management Banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Banks as service charges for the maintenance of the Cash Management System.

5.      Any existing deposit agreements between or among the Debtors, the Cash Management Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions and any blocked account control agreements, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order.

6.      To the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is thirty (30) days from entry of this Final Order, or such longer time as

-5-

Page (6)
Debtors:              VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:             26-14510(VFP)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                      OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                      PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                      EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                      INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                      EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                      (III) GRANTING RELATED RELIEF

agreed with the U.S. Trustee, without prejudice to seeking additional extensions from the Court, to either come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; provided that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

7.      For the Cash Management Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement for the District of New Jersey, within five (5) days of the date of entry of this Final Order, the Debtors shall (a) contact the Cash Management Banks, (b) provide the Cash Management Banks with each of the Debtors' employer identification numbers, and (c) identify each of the Bank Accounts held at the Cash Management Banks as being held by a debtor in possession in the Debtors' bankruptcy cases, and provide the case number.

8.      To the extent any banks at which the Debtors hold Debtor Accounts are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Final Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully preserved.

Page (7)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                  OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                  PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                  EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                  INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                  EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                  (III) GRANTING RELATED RELIEF

9.        Subject to the terms hereof, the Debtors are authorized in the ordinary course of business and consistent with historical practices, to open any new bank accounts or close any existing bank accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate. The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a "Debtor Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank"; provided that any new domestic bank account opened by the Debtors shall be established at an institution that is (a) a party to a Uniform Depository Agreement with the U.S. Trustee for the District of New Jersey or is willing to immediately execute a Uniform Depository Agreement, and (b) bound by the terms of this Final Order. The Debtors shall provide notice within five (5) days to the U.S. Trustee and counsel to any statutory committees of the opening of a new Bank Account or closing of any Bank Account. In addition, the opening or closing of any Bank Account shall be timely indicated on the Debtors' monthly operating reports. The U.S. Trustee and any statutory committees appointed in these chapter 11 cases will have fourteen (14) days from receipt of such notice to file any objection with regard to the opening or closing of a bank account, or such later date as may be extended by the Court or agreed to between the Debtors, the U.S. Trustee, and/or any statutory committees appointed in these chapter 11 cases. Any new debtor-in-possession bank account must bear the designation "Debtor-in-Possession" and designated as "Debtor-in-Possession" accounts with the case number.

-7-

Page (8)
Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:         26-14510(VFP)
Caption of Order: FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                  OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                  PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                  EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                  INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                  EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                  (III) GRANTING RELATED RELIEF

10.      All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Bank Accounts.

11.      The Cash Management Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Debtor Bank Accounts in the ordinary course of business consistent with historical practices.

12.      The Cash Management Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

13.      Subject to the terms set forth herein, any bank, including the Cash Management Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling

-8-

Page (9)
Debtors:                 VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:                26-14510(VFP)
Caption of Order:        FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                         OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                         PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                         EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                         INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                         EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                         (III) GRANTING RELATED RELIEF

procedures, shall not be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

14.     Any banks, including the Cash Management Banks, are further authorized to honor the directions of the Debtors with respect to the opening and closing of any Debtor Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the joint instructions of the Debtors, provided that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law. The Debtors shall provide notice within five (5) business days to the U.S. Trustee and counsel to any statutory committees of any action taken pursuant to this ordered paragraph; the U.S. Trustee and any statutory committees appointed in these chapter 11 cases will have fourteen (14) days from receipt of such notice to file any objection thereto, or such later date as may be extended by the Court or agreed to between the Debtors, the U.S. Trustee, and/or any statutory committees appointed in these chapter 11 cases.

15.     The Debtors are authorized to enter into, engage in, and satisfy any payments in connection with the Intercompany Transactions, including those related to transfers to the New Operators, and to take any actions related thereto, in each case on the same terms as (including with respect to amount), in the ordinary course and consistent with past practice.

16.     The Debtors are authorized to continue engaging in Intercompany Transactions (including with respect to "netting" or setoffs) in connection with the Cash Management System

Page (10)
Debtors:              VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:            26-14510(VFP)
Caption of Order:    FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                     OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                     PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                     EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                     INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                     EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                     (III) GRANTING RELATED RELIEF

in the ordinary course of business on a post-petition basis in a manner consistent with the Debtors'

past practice. For the avoidance of doubt, the Debtors are also authorized to continue Intercompany

Transactions arising from or related to the operation of the businesses, including Intercompany

Transactions with the New Operators to the extent ordinary course and consistent with past

practice.

17.     The Debtors shall maintain accurate and detailed records of all Intercompany

Transactions and the payment of Intercompany Claims so that all transactions may be readily

traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and

distinguished between prepetition and postpetition transactions for the purposes of determining

administrative expense status. Upon the request of the U.S. Trustee or any statutory committee

appointed in these chapter 11 cases, the Debtors shall provide access to such records to the U.S.

Trustee and/or the advisors to any statutory committee appointed in these chapter 11 cases on a

confidential, professional-eyes-only basis.

18.     The Debtors are authorized to continue to pass through to the New Operators

amounts collected by the Debtors on account of the New Operators' business that are held in trust

pursuant to the OTAs.

19.     All post-petition payments from a Debtor to another Debtor or non-Debtor under

any post-petition Intercompany Transactions authorized hereunder that result in an Intercompany

Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy

Code.

Page (11)

Debtors:          VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*

Case No.:         26-14510(VFP)

Caption of Order: FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
(III) GRANTING RELATED RELIEF

20.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

21.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

22.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order except as otherwise provided in this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an

-11-

Page (12)
Debtors:              VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:             26-14510(VFP)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF

admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

23.    The Debtors shall maintain records of all transfers within the Cash Management System, so that all transfers and transactions shall be adequately and promptly documented in, and ascertainable from, the Debtors' books and records, to the same extent as maintained prior to the commencement of these chapter 11 cases.

24.    The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

25.    Notwithstanding anything to the contrary in the Motion or this Final Order, any payment made or authorization hereunder shall be subject to the applicable budget and/or cash collateral authorization requirements imposed on the Debtors under any order(s) of this Court authorizing the Debtors' use of cash collateral and post-petition debtor-in-possession financing facilities, including any order(s) authorizing post-petition financing.

26.    Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

Page (13)
Debtors:              VENETIAN CARE & REHABILITATION CENTER, LLC, *et al.*
Case No.:             26-14510(VFP)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
                      OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
                      PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
                      EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
                      INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE
                      EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
                      (III) GRANTING RELATED RELIEF

27.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

28.    Notwithstanding Bankruptcy Rules 6004(h) and 4001(a), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

29.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

30.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

31.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

-13-